First on Mr. Kent Payne. May it please the court, I'm Kent Payne and I'm here representing Eric Otteman, the plaintiff and appellant. What we're dealing with today is a case where we alleged promises made in two contracts and promises broken, specific promises. We've alleged numerous instances where the Knights of Columbus failed to live up to their promises and it's up to us today to figure out or up to you all today to figure out what those promises mean and what are the consequences. You know, looking over the district court, as I appreciate the reasoning, the district court said that we had not made any allegations of specific violations or specific breaches of the contract. We've made many and I'll go over those in a few minutes. But it seems like we've sort of picked, it seems like the court has done a little bit of picking and choosing among some of these different, very important provisions. A wise mentor once told me that you're going to have clients come to you and say we have a deal and we want you to draw up the documents for that deal. And it's up to you to figure out all the moving parts and you have to put down on paper the who, what, when, where, sometimes the how. And a lot of times those little deals make a huge difference. People call lawyers deal killers, but a lot of times there's no deal in the first place. In this case, there was a deal and it was a very involved contract. And some of these provisions that I'm going to be talking to you all about today are super important to my are specific provisions in the contract dealing with territory and dealing with decisions on who makes decisions on staffing and termination and selection of agents. Territory, that's the where. And that's super important because if you don't have a certain territory, then it makes it very difficult to make a living. Now, under the general agent contract, there is a specific territory set forth. One of our allegations was that while in that territory, Mr. Ottoman had attempted to solicit someone within his territory. And at that point, he was told by the Knights that he couldn't solicit this particular person. Is that the only example of that? It seems to me that the Knights of Columbus talk about this was under some different program dealing with the NFL. You're talking about the Lombardi matter, when you said you couldn't solicit a particular Is that the only example? Not that it's therefore insignificant, but I want to make sure, is that the only example? Well, that's the only example that we that we plated. Okay, so that's the only one in the case. Now, but what it seems like is that now, the Knights answered that by saying that, well, we had the right to decrease your or change your territory. Well, seems to me like that ought to be a defense that ought to be raised in an answer and tested with discovery, because we're basically inferring. I mean, we're drawing the inference on a document drafted by the Knights that's favorable to them that, yeah, we could have done this. Well, did they do it? There's nothing in there. So was the territory exclusive? Yes. Where does it say that in the agreement? Well, it gives him the I don't know that it says it specifically, but it gives him that territory. And it says the general agent and field and district agents are authorized to solicit and procure applications for insurance within the territory assigned to him or her, presumably. So if it's not exclusive, does the Lombardi claim go away? I mean, could the KC's go in and solicit insurance directly, I guess, from Connecticut or through the NFL program, whatever specialized program also? That is certainly not the custom. But is it in the contract? Well, I believe it is because, you know, the way that I'm not sure specifically set forth, but the way that the Knights of Columbus are each region has one general agent. That's the way it is all over. I don't know that I pleaded that, but I believe that that is certainly. And again, that's what we pleaded. And I think in order to, you know, if you draw the inference in favor of my client because it wasn't his contract, I believe that that inference would dictate that my client does have exclusive authority over that to solicit in that territory. It's a geographic territorial organization. That's correct. There's no concurrent. That's correct. They're all by certain parishes or, I guess, counties in other states. But you're inferring that. It's not necessarily spelled out in this agreement anywhere. No, I don't know that it is. This is a motion to dismiss, so certainly would be other evidence to explore if it went beyond this. But I would say on the face of it, one exception to the right of your client to have pursued a policy in the geographical area because of some other special program doesn't seem surprising. But I will say on the pleadings, maybe it does matter that we don't know much about that. But once you deal with other issues, that seems to me a very limited problem. What else do you have for us? The real issue that I believe is the crux of this matter is, and we've made lots of factual pleadings, if you look in the contract, we've referred you to places where it says that my client is to be involved in hiring and firing decisions. Let me talk about one of those. General agent and the order shall enter into contracts with field agents in such numbers and district agents in such numbers as may be necessary. There's no real setting out there of how that relationship works. It identifies two entities, the order and your client, general agent under this contract, and shall enter. I mean, without more particularity to that, I don't know what your claim is exactly. What is your claim and what is your injury? Well, the injury is this, and we've pleaded this out also. How does the injury arise with the contract is what I want you to answer from a breach of the contract in your view. Okay. The injury is that my client is exposed and, in fact, paid the amounts advanced to those. Right, but where does the contract say that can't happen? It says the two of you, the order or whatever it says to say the order, general agent and the order, shall do this. Are you saying that your client has a veto over it? I don't read that. I'm not quite sure what to make of that language. Why have they breached it by creating more field agents than your client wanted when the language just says the two of them entered these agreements? And that's a fair question, and I'm ready to answer that. Where it hurt him is— You don't always ask fair questions, so I'm glad. No, well, and here's why this makes a difference. So my client is supposed to have input. My client, okay, if you see what we pleaded, my client was one of the top performing field agents, and then he moved over here to become a general agent, and he turned around, and the performance in this region got much better. So the thing is, if he's not going to be considered at all, and that's what he will, and that's what he has pleaded— The complaint says, I was never consulted or that my consultation was ignored or just what is your pleading on that? All of the above, I believe, is in my pleading because even my client had even attempted to terminate one completely non-performing agent, and he was countermanded on that. He couldn't— And, you know, he's the only one on the hook for this, and I'll tell you why. You can tell me why in just a moment, but it does seem to me, I'm looking for language on the contract that supports a breach on the pleadings, and you say he was countermanded. You say he wasn't consulted. I'm looking for language in the contract that says the order can't do that. What the contract says is that the decision should be made by my client and by the order. That's not the words, but that's how we ought to interpret it. The general agent of the order shall enter into contracts. I don't know what that means. You both sign on these field agent contracts. There's somebody for the order, and your clients both sign them. Is that what that means, in part, anyway? Well, they do. Is that how it operates? If you field agent contract, I didn't look at it. Was there a general agent who signed your client's field agent contract in addition to your client? Correct. Well, it would be my—no, it would be someone from the— Well, I mean, back in Texas. I can't recall, but I do know my client and the Knights are a party to it, and it's in—the field agent contract is in that form. But the order and the general agent shall enter these field agent contracts, and I'm just wondering if Mr. Ottoman's field agent contract was signed by somebody of the order. It looks like it was, and then I can't read the signature, but I guess that's your client's signature in 06, maybe. Okay. Keep going. So, well, and here's the thing. At the 12th—at the motion to dismiss stage, as I read the cases, unless we can show that reasonable binds cannot differ at all regarding the interpretation of this contract, then we need to—then the case survives the motion to dismiss, and we then test the very—and the very arguments you're making, they get made in a motion for summary judgment, they get made at trial. But right now, we have to—I mean, you almost have to make the inference in favor of the Knights of Columbus if you— But don't you have to have a right that we can say is fairly interpretable, can be fairly interpreted from the contract, and that right was breached? So you're saying you have a right, your client has a right to do certain things, to be consulted, maybe to have a veto. I'm not sure if I'm hearing that or not, and I'm looking for language in that, which may be there, but to the extent there's no ambiguity, this is a legal determination of what the contract means, which we can do at the motion to dismiss stage. Well, okay, so here's where I—here's why it makes a difference. My client is supposed to have input. That's what—and this may not have been drafted— Did that come from the language I was reading, the general agent, the order she'll enter into? Is that what you mean? Yeah, and it says—and it also says that the draw debt—and there's another— Okay, so there's maybe better language than I've been reading. And there's the draw debt language, and I'll have to find that, but there's also language that says that the draws, meaning, you know, payments in advance of earned commissions, are—those draws are to be set with—after consulting my client. It does seem like— Number 6C of the field agent contract? That's—well, that—yes. And my client—and also, the general agent is also a party to those contracts. So— I was going to ask about that. I mean, so it seems to me that one thread of your claim is the KC's hired too many agents in the general agent's territory. In other words, they sort of flooded the market with field agents? Is that— Not so much that as we—our concern was more the ability of those agents and their performance. So it was a post-hire— Well, somewhat— —evaluation and management of the field agents. And also, my client was basically told, and that's what our complaint says. He was told, hire these people, and he was led to believe that if he didn't hire who they told him to hire, he would be disciplined. He would have problems with— He signed off on every one of the field agent contracts? He did because he was—you know, he didn't feel like he had a choice. And your pleading says that. I had to sign field agent agreements that I thought I—that I did not want to sign. I mean— When you don't have much time, I'm not trying to get you to— Yeah, I mean, I know it's in there. I mean, I don't know if we said it— We'll look for it. What do you— —quite that eloquently, but I do—I do believe that we did—I mean, I know we did say that we were—we were pressured to hire people that weren't qualified, and we were pressured to keep people that weren't qualified no matter where they performed in. And my client, with a good book of business and a lot of—and a lot of overriding commissions to come in, I mean, he's the only one in this situation that had any risk because the Knights knew that there—he had—my client had enough future commissions due that they was going to be able to pay off. And in fact, he has paid off all of his draw debt, but he had no choice. All right, counsel. Thank you. Time's up. Thank you. Mr. Kagan. May it please the Court— Kagan. I'm sorry. I'm sorry, Judges. May it please the Court. My name is Tom Kagan with the Phelps Dunbar Law Firm, and I represent the Knights of Columbus. What office are you in? Baton Rouge. Baton Rouge. But I know Todd Butler well, so— Can you introduce me to Todd? I'll give him—I'll give him your greetings. This is a case— I'm David Chisholm with the Phelps Dunbar. This is a case in which the contracts at issue give the Knights of Columbus the right to do the very things that plaintiffs say we couldn't do. And before I get to my argument, I want to—I want to emphasize a couple of brief facts along with the actions or the nature that form the claims in this case. The facts—he signed a field agent contract in July of 2006, and Judge Southwell can answer your question. Yes, he had a general agent, and yes, his general agent was responsible for his draw debt, and yes, Mr. Ottoman drew draw debt for a while, and his general agent was responsible for that draw debt. So this isn't—and the reason I bring that up is if it's fair for him, then it's fair for other people as well. Counsel, is Mr. Ottoman's field agent contract relevant to this case? I don't think it is. I know there's a claim in there. I think it's relevant simply from the standpoint of Mr. Ottoman makes some allegations that he was surprised about draw debt and how much he would be responsible for. Well, let me ask you a little finer point. Is the order trying to recover general agent debt, the draw debt of his field agents, out of the renewal commissions or other income streams arising out of Mr. Ottoman's field agent contract? I do understand. I think that's an allegation in his third amended complaint, and the answer to that is the contract gives us the right to do that as well. Section 7G talks about upon termination— Section 7G of what? The general agent contract, and I'll just go there right now because that seems to be an issue. It says 7G. It's on page 3 of his general agent contract. In the event of termination of this agreement, and then it's got some other language in there, it says he'll continue receiving his renewal commissions, and the second to last line, lest any indebtedness. It says any indebtedness. It's not limited to other things, but any indebtedness. But it says it's any indebtedness owed by said general agent, unless any amounts paid to the general agent as a draw against future commissions. How does that reach the renewal income or commission, any kind of income stream that he's entitled to under his field agent contract? Well, my position on that would be that any indebtedness means anything he incurred during his entire relationship. What's the contract's position on that, though? I don't see it. I don't see it in the field agent contract, and I don't see it in the general agent contract that we will go back and get your field agent revenues if we need to, to satisfy your general agent debt. Well, I understand your position. I would respectfully disagree. I just think... Is there an eight corners rule that I'm missing, or is it a four corners rule under this contract? Well, I think it's under 7G. If you disagree, then I'm mistaken. I think any indebtedness means any indebtedness, and I also think that Mr. Sideman, who is the one, the general agent who signed James Sideman, I think that's how you pronounce it, he was responsible for that draw debt as well. I don't know... He was responsible for the field agent's draw debt. Correct. I think it's fair to say under the general agent agreement Mr. Ottoman entered, he was responsible for his field agent's draw debt, but I don't, I just, I don't know that you say any indebtedness means the field agent, we can go after whatever income you've got, whether it's under the field agent contract or the general agent contract. That's my, that's my interpretation of that language, and I think it, it, it differ, it's, it's a little bit different language than 7C and 6C that you alluded to earlier, where it talks about he's responsible for specific types of indebtedness. I think 7G is the one that deals with the issue of what he's responsible for upon termination. And another thing, in terms of fairness, how this works fair, in fairness, there is, this is a situation, even his own pleadings say this, that his commissions continued for five years after his relationship ended. He continued, he, he resigned his, his relationship or his contract in September of 2005. He continued receiving commissions offset by what the contract says we can offset it by for five years. Under his field agent contract or general? I think under both. I think under both. I think the, well, I think the offsets are based on 7G that in his field agent, I'm sorry, excuse me, his general agent contract. Let me ask you about the field agent contract. 7C has language that I thought you were also relying on in your briefing, that it gave you the right and, and maybe on, on the face of it, it would give you the right that if, if, if whoever the field agent is, whatever that person's name is, if the field agent owes something to the order before he gets any commissions, that money can be taken out. What's your position today? I'm not saying you change your position. I mean, let me just make sure I understand. What is your position of the relevance to the field agent contract on this, these offsets once he became a general agent? Well, once he became, when he was a field agent, the, the field agent contract says the language is similar. When he was a field agent. Maybe, maybe you're trying to answer, but I think I have a narrow question. What is your position once he became a general agent? What is the relevance of paragraph 7C of the field agent contract? Is it off the table and we're only looking at the general agent contract for these offsets? I don't believe so. I believe that as long as he's carrying his own draw debt as a field agent, his renewal commissions, whether it's as a field that he earned as a field agent or his overwrite commissions that he earned as a general agent will be offset by the draw debts that he either incurred as a field agent or that his field agents incurred while he was the general agent supervising them. Let me say on some superficial level, which may be as deep as I get sometime, but at some superficial level, the Knights of Columbus are saying, if you owe us money before we pay anything, we have the right to deduct what you owe us. And if we owe you money on the field agent contract that at least still exists for certain purposes, is that what gives him the right to continuing commissions? Or would you say that arises from something else? If he, as a field agent, wrote a policy entitled to renewal commissions or however that works, is the field agent contract necessary for that right to continue or does that arise from something else? I'm just trying to figure out what the continuing application of the field agent contract is once he became a general agent. Well, I think in practicality. I think the best way I can answer your question is, yes, if he incurred draw debt as a field agent, that's if. I know that he did incur draw debt and he was a field agent for, I believe, it was seven years. He was seven years as a field agent. If he incurred draw debt after seven years, which I think is probably not the case, and I'm not sure that he's even alleged that, but after seven years and the fact that he got moved to a general agent means he was doing a good job as a field agent. They wouldn't move someone to a general agent who was unsuccessful as a field agent. So I think, to answer your question, I'm trying to answer your question. I don't worry about draw debt as a field agent. I'm worried about draw debt as a general agent where he's paying all field agents debts. I'm trying to figure out how the field agent, the older contract, applies and how does it affect the relationships between the Knights of Columbus and Mr. Ottoman once he became a general agent? What purpose does the field agent contract serve anymore? I think it doesn't. I mean, I really don't think it serves any purpose. Paragraph 7c that talks about these offsets is not relevant to today's case. Well, I think that's correct except for the fact that Mr. Ottoman makes some allegations in connection with his unconscionability claim. He contends that this was a big surprise about this draw debt and him being responsible for it. He's known that the general agents are responsible for the field agents' draw debts. He's known that for the nine years he worked there. So I think, and to answer your question, I think directly, if I can get there, I'm not sure if I'm answering it, but if there was remaining draw debt that he had after seven years, after the seven years he was a field agent, he would continue receiving. His own draw debt, money he had gotten. Correct, correct, because there's no draw debt. He's only responsible for his draw debt when he's an F.A. If there's still draw debt existing at that point, he would still receive renewal commissions that he earned as an F.A. for seven years, but it would still be, that would still be reduced by any draw debt if there was any left. Probably there was nothing left after seven years. Let me move you to this, the role of Mr. Ottoman as a general agent and his arguments and his allegations and his complaint that he wasn't given the role that the general agent contract permitted. That he needed to have input and he wasn't even given input on who the new F.A. should be. What about that? I will say the contract isn't specific, but if it's going to have any meaning at all, it seems to me that Mr. Ottoman has to have some participation in what the general agent contract refers to. Well, let me address that in a couple of ways. First of all, on the issue of hiring and firing the field agents, what Mr. Ottoman said is not that he had no input. I know he makes some conclusory allegations about I didn't have any input, and I think you may have alluded to some of those earlier, but what he's really arguing here is that because it affects his draw debt and his commissions, then he should have had exclusive decision-making authority, and nowhere in the contract does he have the unilateral right to hire and fire field agents on his own. We're looking at a complaint, and you're more familiar with that than I am, and counsel even ahead of both of us probably, is the allegation there, and how do you respond to it, if it is that I wasn't given the role in these decisions that the contract gave me. What's in that allegation and how do you respond? It does seem to me here, and I haven't read the contract, and what's your response to that? My response to that is one of the clauses that you pointed out, Your Honor, is paragraph two of the general agent contract says the general agent and the order shall enter into these agreements, and Judge Wilson, you pointed out correctly that every one of these contracts are three-party contracts. They're signed by the field agent, they're signed by Mr. Ottoman as a general agent, and they're signed by the Knights of Columbus, and that's why he doesn't have exclusive authority to hire and fire people whenever he wants, because we're a party. It almost comes down to whether you give the contract language any effect. What would you say on these pleadings at this stage on 12b-6, what authority can you say that he had? Well, let me refer right to his pleadings themselves, because that brings up the point that he did, in fact, have some authority and conclusory allegations that I had no authority are belied by his own pleadings. If I can refer to paragraph 42 of his third amended petition, he's talking about, in the beginning of this paragraph, he's talking about and he's complaining about the field agents that he has, saying that they're not very good, and he ends that allegation by saying, in fact, the only field agent contracted in Mr. Ottoman's draw debt was hired after a recommendation by Mr. Ottoman. Right there, he's saying, I recommended people, and I recommended people who got hired. There are other places in his pleadings where he said, I recommended people get terminated. I didn't think they were performing well, and I thought they should be terminated. In one case, he says, well, Knights of Columbus didn't jump at my recommendation and fire him on the spot. They waited two months. Well, we had reasons, and we have the right under the contract to not just jump at every decision he makes. If he wants to fire the field agents, we still have a say in that, because we're a party to that contract. Is he supposed to have a role in what draw the field agents in this territory take, since he's responsible for unpaid draws? I think he has some input. I don't think he has already. Mr. Ottoman went through the same process when he first became a field agent. The Knights of Columbus pays these people a draw against future commissions, because they don't have a client base. They don't have customers, and they don't have commissions at this point. That's exactly right. They need to set some sort of draw, which is like a salary that is used to offset future commissions, so they'll have time. They'll be able to earn some money to feed their families and house their families. Once they can build up their client base, they can pay off that draw debt with the commissions. If we're talking about the issue of why did we do it, Mr. Ottoman alleges that we may have been in bad faith, because some of our executives were trying to up their bonuses. Mr. Ottoman was trying to up his commissions. The case law says that's not a breach of contract if we can do it under here. Let me ask you a question along the lines of what Judge Southwick is asking. Section 6C of the field agent agreement, and I'm looking at, I guess, his field agent agreement, but he alleges that the other field agent agreements are similar. It says that the field agent may receive a draw against the future commissions in an amount to be determined by the general agent and the order. Again, that's a specific provision in the contract that suggests concerted activity between the KCs and the general agent. What's it mean? Was that enforced? Did he have input into what the level of draw or commissions was going to be? I think he did, and he signed off on all the contracts, as you pointed out earlier. He signed off on the contracts, but this says that the general agent and the order would set commissions together, or you would determine it. I mean, it's conjunctive. It's and. The general agent and the order would set the commission rates. Agree. Doesn't he allege that he wasn't given the ability to do that? I think what he alleges is he didn't have the right to control that, and I think to some extent he didn't. We have a say in it also. If he says, I don't like this person. I want to give him zero draw debt. We're not going to agree to that, and I think we have the right to say that as well, and he never complained about this until after he was gone. Nine years he's with the Knights of Columbus working for him. He seemed perfectly satisfied with the contracts while he's there, and he continued earning commissions. In fact, if we just if we to address that specifically, and I do understand we have to make a few inferences here, but I don't think they are unwarranted inferences if we talk about the issue of fairness. It's I think this is all governed by the strict word of the language, but if we talk about fairness, and Mr. Payne mentioned earlier that as a G.A. he was very successful. I don't think he's going to get up here and say I was successful without the help of my field agents. All my field agents are bad. He was successful. He alleges that he alleges, first of all, that as a G.A. the vast majority of his commissions are what they call overriding commissions, meaning they are based on policies sold by the field agents. That's paragraph 15 of his third amendment complaint. Apparently, he did very well because he says on page 13 of his brief, and Mr. Payne pointed out in his argument, that he greatly improved the sales production and became a top 20 G.A. in the whole country, and in paragraph 18 of his third amendment complaint, he says that when I took over the southeast Louisiana territory, we were about 142 out of 156, and I brought it up to the top 20. Well, he didn't do that on his own, clearly, so these are bad is nothing but conclusory allegations that aren't supported by his own allegations. He didn't bring this entire territory up without the help of very good field agents and very good field agents that he agreed to have. Whether he didn't like it, maybe that's the case, but he signed off on their contract. He signed off on their draw debt, and that's what the contract provides, and that's basically what he wants. I see I'm out of time. Basically, what he wants here is he wants the benefit of all of the overriding commissions, but no responsibility for the draw debt. I'll extend your time long enough for you to answer. Not outcome determinative, but it does maybe give you a little better idea of how this works. Are these agents selling only to members of Knights of Columbus? They are, Your Honor. Okay, so there's a set, a fairly limited set of potential policy owners. Correct. All right. Thank you. Thank you. Mr. Kennedy, you have five minutes on the roll. Thank you. Judge Wilson brought up one of the issues that I ran out of time on, because it is not clear at all. In fact, I would argue that it's not specified that the general agent, that field agent earned commissions could be offset for general agent debt. That doesn't, the contract does not read that way. It certainly is not, it certainly is open to interpretation. And, you know, remember that the field agent contract, which is what they're offsetting some of the debt against, the draw debt, was done before Mr. Ottoman or Knights of Columbus had any idea that Mr. Ottoman was going to be a general agent. Now, one of the things, Judge Southwick, you were asking me about the decision-making process, and on paragraph 32, we pleaded in practice, defendant became the sole decision-maker regarding hiring and terminating field agents and setting the amounts of their draws. Defendant disregarded any of Mr. Ottoman's requests to terminate field agents. I really understand what you're saying. I was reading the next few paragraphs a little while ago, not out loud, but while I was here on the bench. You are making allegations there of what your client did, which sounds to me as if potentially you're arguing that he did have a role, which is also what 32 is talking about, but he was overridden. And you talk about your client tried to fire Mr. Tomasella, and then Joe Martinez overruled that. Well, that sounds like you are both having a role, but the control remained with the order. And to the extent those are your allegations, we need to find that that's inconsistent with your contract, which says both of you have or to do certain things. And I would think between the two of you, if you couldn't agree, the order would seem to have that authority. Why would that not be so? Well, what we pleaded was that the defendant became the sole decision-maker regarding hiring and firing. But you did have a role, and you weren't saying that he, I don't see the pleading, tell me if it's here, that I was never listened to, that my recommendations or my suggestions were never accepted. You talked about this Tomasella you tried to fire, your client did, but were there others? I was never allowed to dismiss somebody. Is that sort of allegation in there that every time I tried to do something, it was rejected by the order? Yes, if you look in paragraph 32, the second sentence, it says defendant disregarded any of Mr. Ottoman's requests to terminate field agents, despite him providing concrete evidence of their poor performance, lack of effort, and lack of process. So that seemed to be, and the other thing, I mean, and if you look in paragraph 42, these field agents, the only field agent contracted in Ottoman's territory who paid off all his draw debt was hired after a recommendation from Mr. Ottoman. None of the others did. All of those, he had draw debt from each and every one of them. He was supposed to have ability to exercise independent judgment, and he wasn't able to do that. He wasn't able to provide any meaningful input, paragraph 40. That's what we have said here. Now, what I heard on the other argument was fighting the facts. You know, well, Mr. Ottoman didn't complain until nine years or whatever. Well, you know, when you start fighting the facts, it seems to me like 12b-6 is not appropriate, Your Honor. That's all, you know, that's my understanding. I'm not in this court nearly as much as I'd like to be, but that's my understanding. So I guess that's all I wanted to say, unless you all have questions. Yes, that's it. Thank you.